You told the goods in the United States that you were going to export. In that event, according to my architectural regulation, you're told the duty is going to be fixed, but you don't have to pay it unless I tell you to export the goods. What happens? You export the goods, and then they say, okay, now that you've exported, we want you to pay the duty. Would the imposition of the duty in those circumstances in your review violate the export rules? Yes, Your Honor, because the payment of the duty is still conditioned on the export of the goods. Does it matter what the duty is or how it's calculated? That's correct. The issue is not what it's called. The issue is its functional effect. If it is a duty which functionally imposes, is laid on the export of goods and burdens them, that duty as a condition of export is unconstitutional. How does it burden the goods when, as a result of one of these procedures, you've got the advantage of not having to pay the duty when you're importing the goods? Your Honor, if the purpose of the regulation, as you've revised it in your hypothetical, is still to discourage and discriminate against particular goods going to NAFTA countries as opposed to other countries, there is still a discriminatory effect specifically designed to limit and regulate and discriminate through the application of duties certain exports. Therefore, I would submit that they are still burdening the export and violate the export clause. Maybe I misunderstood Judge Friedman's hypothetical, but it seems to me under the hypothetical, everybody's treated the same. The importers pay the tax when they come in, and the exporters, if anything, have an advantage because they get their duty deferred until such time as they export it. So I'm not clear. I mean, I think you could argue that that's distinguishable from this circumstance, but I don't understand how that would be—everybody who imports gets paid, is levied a tax. The only advantage to anyone are the exporters who can defer the tax until the time they export. Your Honor, I think the broad reading of the export clause still finds that if it nevertheless is conditioned on an export and or affects a process closely associated with export, it nevertheless would be deemed a burden if the payment of it is conditioned by the export, and in this case, for the express purpose of discouraging that export. It is distinguishable from our case facts. I'll confess to Your Honor, I thought long and hard early in this case about whether there was some way Customs could have crafted an alternative regulation and still be within the protections of the— Your Honor, under the present regulation, when you brought your goods into this country, do you have a choice of either paying the duty then and there or deferring it under this regulation? Your Honor, the purpose of entering it— I don't want to know about the purpose. I just want to know, if you—when you bought and imported these chemicals, could you have said, we'd like to pay the duty now? I mean, it might have been crazy, but could you have said that? A crazy person might have done that, Your Honor, but it would defeat the whole purpose of entering the goods as entered under a duty-deferred program. You're arguing that imposition and assessment are synonymous terms, but doesn't that apply in the face of our Amex opinion, where we laid out quite distinctly the distinction between the two? Amex, Your Honor, and the Norse hydro case cited by the government were not export clause or constitutional cases. And I think if you look at the export clause cases, the issue focuses on the simple and straightforward mandate and language of the export clause, which is no tax or duty shall be laid. If you look at the export clause cases, they find that the export clause has been violated where duties have been assessed, have been imposed, have been levied, have been exacted, have been applied. Why would we make a distinction between export and the Constitution and export as it's applied statutorily? We start, of course, with the extraordinary straightforward mandate of the export clause. Secondly, we fall to the broad interpretation given to that simple language. And thirdly, I mean, for example, if you look at the IBM case, the IBM case concluded in its concluding paragraph that we conclude that the export clause does not permit assessment of nondiscriminatory federal taxes in export transit. Similarly, the Spalding case, which we cited in our reply brief, said the fact that the law under which the tax was imposed was a general law touching on all sales and class. I think that in my argument, if the regulation had stated as follows, this tax is imposed on all products imported into the United States. If the products are going to be used or consumed in the United States, the tax is payable now. If, however, the products ultimately are going to be exported from the United States, the tax is not going to be paid until the time of export. You would still say that in that situation, the collection of the taxes at the time of the export violated the export clause. Why? I would, Your Honor, if it was Congress's express purpose in so arranging that scheme to discriminate against certain exports in export transit, which is the case here. But the fact of the matter is, under the export clause broadly interpreted, duty is not only prohibited against the goods themselves, but processes closely and activities closely related to the export process. If you look at the IBM case, look at the levels of abstraction. The court found unconstitutional a tax on a premium paid for export insurance by an insurance company that's foreign owned on goods exported out of the country. Now, if we have those levels of abstraction... That's correct, Your Honor. That is the classic and most significant factual and discriminatory intent. It clearly is designed, and is expressly designed, to burden an export. They wish to discourage the use of dirty deferral programs on exports to tune after countries. It's its express purpose. And that is manifested and confirmed in the precise language of the regulation. The exported goods shall be subject to duty. The only way I could have drafted a regulation to be more contradictory to the export clause is to say that it does violate the export clause. But what do we do about your importation of those goods? I'm sorry, Your Honor, in terms of... You're going to import them without any consequences? They are not imported under... the duty deferral programs, Your Honor, they're not imported for consumption in the United States. Are they imported without consequences? If we're going to interpret your export the way you want to do it, just anything that goes out, then we maybe interpret the import just as broadly. You brought it in. Are you going to pay those duties then? There are implications when you bring in a duty deferral program. Those implications are that you are mandatorily required to export. Which is why it is unquestionably clear that when the goods entered the United States, they were in export transit. So you don't want to pay any duties on them? That's the point of a duty deferral program. No, it's not the point of a duty deferral program. It's a deferral program. You defer the duty which you are obligated to pay. And you are not obligated to pay it, Your Honor, if you export to any other country other than Canada or Mexico. But then you escape duty in California? If you export to another country other than Canada or Mexico. So your point isn't discrimination between the exporter and the importer, that the importer is treated – an importer who does not export is treated better than the exporter. You're saying everybody in this duty deferral program is an exporter. So the discrimination comes that some of those exporters don't have to pay the tax when they export and some of them do. That's correct. And only those duties to the NAFTA countries which apply under the regulation are grouped. That's correct, Your Honor. What happens if you import the goods under the deferral program with the intention of export? And then somewhere within a year you decide you're not going to export for whatever reason. Are you then subject to the duty retroactively at the time of importation? Ironically and technically, Your Honor, you're not. Customs under regulations do not go back and apply duty. They apply liquidated damages in the total of twice the estimated duty that would have been applied had you entered it for consumption in the United States. So technically speaking, if one imports goods into a duty deferral program, it's never subject to duty. It either goes out to another country – another subject to import duty. It goes out to another country and it is duty free. It stays in the United States and is subject to liquidated damages. Or it goes to a NAFTA country and is subject to duty under Article 303 and the regulation. Just to be clear, Your Honor, the duty that you pay when you export these products to Canada is the same duty you would have paid if you had not been planning to export them at all? It is the same amount, Your Honor. Same amount, yes. We will not concede it's the same duty. No, but it's the same amount. It is the – what you pay when you export the duty is the amount you would have paid when you imported the product if you were not importing it for export. That's correct, Your Honor. And the reason for that is that there has to be some basis for valuation and assessment. As I indicated in our brief, there are five duty deferral programs affected. Well, but as you said, there has to be some basis. That's true. But it is truly a tax that you pay on exports. I suppose what you would do is value the export at the time of export than impose the duty. That's not what they do, is it? They do it in one of the duty deferral programs, Your Honor. And in the other ones, they do it at time of withdrawal of a bonded warehouse. In others, they do it at time of withdrawal from a manufacturing bonded warehouse. The imported duty only applies, Your Honor, as a basis for assessment only when the imported goods change form because they came in to be processed, altered, or manufactured. So the goods going out are not the same condition as when they came in. But the liability is assessed based on the goods that come in, right? There is no liability less than until there is an export to Canada. No, Your Honor. Because the goods have changed in form and condition, they have to pick some factual basis to decide what its value is, what their classification is. The actual dollars from it. That's correct. No, that's correct. On the basis of its condition, it's a time of importation. However, it doesn't apply to just the goods that came in. It applies to another good if it's manufactured, which may include non-exported goods, as we learned. With the Court's permission, I will point out just one more thing on constitutionality. We'll quickly go to jurisdiction. We put the lie, Your Honor and the Court, on the cases cited and relied upon by the government to win our case. If you look at Cornell v. Coyne, it states that, in which goods were exempted of property of life, it said, but if general tax laid on all property of life and not levied on goods in the course of exportation, nor because of their intended exportation, is not within the constitutional prohibition. I submit to the Court that the fact that these were entered by New Farm for export under duty of referral court, they were mandatorily required, that there was a clear expression of intent that they wanted to and must have imported those goods. Let me turn quickly, if my support has further questions, to the jurisdiction issues. As I understand it, the only significance of the jurisdictional issue in this case is whether you qualify for class action status. Is that correct? That's correct. When the Court first came down and ruled against us, it was my expectation that the Court might have an opportunity to address what Judge Varsani has called jurisdictional confusion between 1581A and I, and the tension between Miller and Swisher and Thompson and the like. And as Custom's position fully evolved through the course of the pleadings and arguments case, we were able to now rely simply back on the Miller rule that I jurisdiction is established if it is found that A is manifestly inadequate or futile. Okay, if you were to prevail and you get money back in the protest and the regulation is invalidated, how is that relief manifestly inadequate? If we- If you were to prevail under A, that's the relief you would be entitled to if you were to prevail under A, correct? Yes, Your Honor. What we're inquiring about is whether or not that A relief is manifestly inadequate, and that's what you have to show. That's correct. So I'm trying to ascertain why that relief, if you were to prevail, is manifestly inadequate. Your Honor, the point is, can we or could we have filed an administrative protest that would have given us an adequate and non-futile remedy? Custom's is on the record that said, if we had requested unconstitutional finding of the regulation, which is the only part of the authority we're dealing with which is in Custom's power to define unconstitutional, they said that it doesn't matter. We would have gone ahead under Article 303 and U.S. Note 1C and rendered the same result. To use Custom's language, the protest would have been of no avail to plaintiff. It is clear that we and the members of the procurative class could file an administrative protest until the cows come home, and Custom's either would not or could not rule in our favor. So you're under regulation, so you're under administrative procedures and not challenged by statute. We didn't at the time, Your Honor, but Custom's forced us into that position. And as a result, Custom's concluded that, quote, no reasoned determination can be reached that the constitutionality of 19 CFR 181.53 would not affect the constitutionality of Article 303, the trade provision. We argued at the beginning that initially we did not think we needed that remedy. We could achieve our remedy simply by challenging the regulations, since there is no statute, per se, that tells us to do what the regulation tells us to do. However, Custom's came back, and one of their arguments was the court cannot find the regulation unconstitutional because it would therefore find the trade provision in the statute unconstitutional. Now we're back saying that's what we said in the first place. And that's why Custom's could not rule in our favor or any other piece in the last administration if we brought that administrative request. Suppose we were to agree with your constitutional theory. In that situation, couldn't the court of international trade give you all the related proceedings? That's correct, Your Honor, and it could do so. And it could do it under A, couldn't it? No, Your Honor. It could not give members of the punitive class who have an inspection in their office. Just as far as you're concerned, as far as your client is concerned, that you would get all the relief you're seeking under A, couldn't you? Well, Your Honor, we pledged under A. We did not get relief under A. And in retrospect, we had no opportunity whatsoever to get it under A. We met the procedural requirements for A. Make no mistake. We filed a protest, and it was in. Thank you, Mr. Chunker. I think we're getting the point. We'll hear from the government now, and I'm going to restore your rebuttal time. And if you could give Mr. Hughes an extra five minutes if he needs to use it, and that will even up the time. Thank you, Your Honor. Excuse me. May it please the Court. The duties imposed upon new farms of goods are import duties. The liability for those duties occur at the time of importation, and the actual assessment of those duties is based upon the condition of the goods as entered into the United States. It's not based upon the- Are we examining a regulation, or are we examining the Constitution for sufficiency there? What sets of cases should we look at? Should we look at the Amex line of cases, which support what you say, or do we look at the constitutional cases on export, which interpret that pretty broadly? Well, I think you'd look at both of them, to be frank, Your Honor, because it is a constitutional challenge to a regulation. And so I'm not going to stand here and argue that customs is entitled to deference with regard to the Constitution. But nevertheless, even those constitutional cases make very clear that the role of the courts is to look at not just the form of the language or the like in a particular statute or regulation, but look at the actual function of what the disputed tax does. And if it's a tax prior to the export stream, whether it ultimately ends up- that good that was taxed ultimately ends up in the export stream, it's constitutional. That's made clear by turpentine burgess and pasty burgess, where there was a manufacturing tax on tobacco laid at the plant. Some of that tobacco was exported- The problem of exports to non-NAFTA countries being exempt from this import tax, as you call it. Well, I don't think they're exempt. I think it's waived as a result of the temporary- And I think that's a distinction. Why doesn't that waiver apply to exports to NAFTA countries? Well, because when the NAFTA parties negotiated this agreement, they did not want to- by reason of the lesson duties that would be imposed for trading between the NAFTA department. They just had the temporary deferred duty programs be used to distort the normal import duties that would be due into those countries. So, New Farm is perfectly free to import its duties into Canada. How does it disrupt the normal import duties? Because if- for instance, let me just- Maybe now for a second that Canada, Mexico, United States is a unitary market, which is apparently what they wanted to accomplish. Why aren't they imported when we export them to Canada and Canada collects the taxes? Well, because the tax collected on goods from the United States to Canada, because of NAFTA, is less than the tax collected on goods from another non-NAFTA country to Canada. So, maybe an example I think would help. If the goods that New Farm imported into the United States were imported to Canada, they may have, for instance, a 10% rate if they're going directly to Canada. If they come into the United States, they may have the same 10% rate. But if they're deferred and then re-exported to Canada, the rate between the United States and Canada may be only 5%. So, if you- first of all, if you accept New Farm's interpretation, they're not subject to any duties at all. But even if- What about- I'm sure they would say they're subject to duties when they import into Canada. They have to deal with Canada's duties. Right, and that's what the distortion is. It's by using the duty deferral program, they'd only pay the lower 5% rate. Rather than the 10% rate, they would have had to pay if they imported directly into Canada. And then the NAFTA partners put that provision into the agreement so that none of the NAFTA countries could be used as what they call an export platform. Now, does the operation of this regulation then accomplish a net 10% import? Or do you charge them the 10% and Canada the extra 5% so they're actually penalized? No. In fact, the way it operates is it gets the net thing. You do the lesser of the two. So, the hypothetical I gave you, if the Canada rate was 5, if the rate upon initial entry into the United States was 10, they would have paid Canada 5, they would have paid the United States 10. Or, sorry, 5. Because it's the lesser of the two. So, the net import will be the same as if they imported into one country even though they do a two-step process for processing the net. Under that hypothetical, there are certain other hypotheticals, for instance, where it may not net out. For instance, if for some reason the duty from the United States into Canada is greater than the duty that we would have paid coming into the United States directly, you have to pay the money to Canada. But those calculations really are not, don't really go to the real question, which is whether there's a... No, this is a discriminatory question. No, well, I think I would respectfully disagree, Your Honor, because what the court should look at is not downstream how they're assessed, but whether the liability is imposed upon an import rather than an export. Well, that's the problem I'm having, because it seems like one could at least see this as gaming the system. But if you decide to have a $0.10 per pencil import duty, and the regulation says that we're going to defer all import duties of $0.10 on pencils, but only impose that $0.10 duty on those pencils that are imported and then exported, is that an export tax? No, it's not, Your Honor, because the tax is on imports. The United States can decide whatever it wants to do. But don't you think that's an odd kind of thing to accept intellectually? The result of this is that of all the pencils that are imported, only the exported pencils get taxed, right? Right, because the United States is choosing to weigh an import duty. Let me give another hypothetical. So you're saying the United States can choose to weigh import duties on everyone other than exports. In other words, exports are the only ones that are set as the import duties, but we're calling it an import tax and not an export tax, and therefore we're OK. I think that's right, Your Honor. If it's an import duty— Isn't that just—it's a little label-y, isn't it? No, I don't think it is, Your Honor. It's a disingenuous label. You're taxing the export. No, again, I don't think it's— You're taxing it because it's export, right? You're only taxing the imports that are exported because they are exported. Agreed. Yes, but I think we're waiving the tax for imported goods. Well, you choose to say it this way, but if I say it another way and I'm right, doesn't that smell like an export tax to me? Well, I think if my way is also right, and the canons of construction on constitutional claims require the court to interpret customs regulation and the statute in a constitutional manner, not an unconstitutional manner, if there are two equally reasonable interpretations. I'm trying to understand, in your view, what is the standard for determining whether a duty is laid upon, quote, exports, unquote? How do you determine whether it's laid on export or on import? What is the standard? What do you do? Well, the traditional analysis under the Supreme Court precedent is to look at the export stream. And if it's laid at some time in that export stream, once it's entered on a path to exploitation— Does laid mean imposed, collected, or what? I think laid means when the liability becomes due. For instance, in Turkmen, the liability became due when it was manufactured. Some of those goods were ultimately exported. And, in fact, there was a beneficial discrimination to the exporters there, but still there was discrimination between domestic goods and exported goods. And the court held that because the tax was laid upon manufacturing, even if it ultimately resulted in a tax being laid upon some goods that were intended for export, because some of the tobacco was definitely intended for export because there was a different rate, it was nevertheless a constitutional tax. But with respect to goods that are imported under this deferred program because they're going to be exported, there's no liability. Is there for a tax unless and until the goods are exported? Why isn't that a duty laid on the export? Well, because there is liability for those goods at the time of importation. This is a duty deferral program. And when they enter under that— Is there liability? There is liability because when they enter those goods under the duty deferral program— Does it have to post a bond? They do have to post a bond, Your Honor. And when they enter it— Even though they're under the deferred program. That's right, Your Honor. And when they enter it, the only way they can enter it is knowing that they're going to re-export them. And depending upon where they re-export them, the fee may range from zero up to whatever it is. But there is actual liability owing when it's imported. Let me— But the liability—you only know when they export them. I mean, it's determined. There's a distinction made. If somebody's going one direction and the other's going up to Mexico, that's when you determine the question of whether there is liability. Right. It's at that point in time when liability is determined. I disagree with that, Your Honor. Respectfully, that's when you determine the amount that's owed. The liability was incurred— Well, if somebody goes to a country—exports to a country other than Mexico or Canada, is there any liability opposed? No, the amount is zero. Oh, so you're saying there's liability across the board. It's just in some cases the liability is zero. It's way— Can't you call no liability at zero? Amount of liability, no liability? You could, Your Honor, but let me— But to say the liability is zero, that's another way of saying there is no liability. I mean, it's—can I say, you owe me some money, and you say, how much? And I say, nothing. Well, you can say, you owe me money, but—and I say, how much? And you say, well, forget about it. I decided to waive that debt. It was still a debt. You waived it. That's what the United States is doing. Your Honor, once I've told you that I'm not going to try to collect the money from you, and you don't owe me anything, you're not liable to me. But I was previously liable, and that's the issue. Can I just give you a hypothetical that I think may explain exactly what's happening here? The Customs Service could have established this program to say you have to pay your duties when you come in. Everybody has to pay them. If you're going to re-export within a year, they're subject to waiver in varying amounts up to 100 percent. That program would be completely constitutional because they'd be paying a duty upon imports. That's the same thing that's happening here. It's just they're allowing the importers to keep their money until the re-exportation, and they're also easing administrative burdens on Customs of collecting money and then refunding it. Then are you saying Congress did it wrong this way? They should have done it the other way? No, I'm saying the court under that candidate— You're giving us a hypothetical that I could buy a lot easier than what we've got here. I'm wondering if that's better than the commission that Congress did make a mistake. No, I don't think so. Under that canon of construction, I think you look at the purpose of the tax, and clearly if the purpose of the tax was an import tax, and under that hypothetical, which operates the same way, it's the same purpose as the duty referral program here, the court should conclude that the statute is unconstitutional. Import tax that only operates on exports. Is that a problem? It's an import tax that operates on all imports, and the assessments are vague. I never—we're talking about the word— Well, I think that—well, actually, I think the fact that it seems like it's semantics is good reason that the trial court's decision should be sustained, because the precedent makes clear that if there's a constitutional way to interpret the language, you should do it that way. And the fact that we can posit constitutional applications of this duty deferral program that doesn't require rewriting the statute or the regulation means that it should be upheld. Or, stated otherwise, if laws violating the Constitution do so, they should be changed. But only if there's no way to read them in a constitutional way. Clearly, the Harbor Maintenance Tax Statute was not possible to read in a constitutional way. But I understand what you're basically saying is the tax was imposed and the liability was created on the importing of the goods. And all that has happened is, in the case of goods that are going to be exported, those imported goods, the payment of that liability has been deferred until they actually ship them out. That's basically what you said. The statute isn't there for it. That payment is a payment of the tax of duty on the import of the goods, not a payment of a duty on the export. That's correct, Your Honor. And that point is re-emphasized by the fact that the tax is calculated upon the condition of the goods imported. If this was an export tax, it would be a tax. Say that again. It's calculated based upon the condition of the goods imported. And let me make this clear because I think this is a very critical distinction. New Farm imported chemicals. The chemicals are subject to a certain duty. That duty is the duty that was eventually assessed. What New Farm exported… And you are somehow deducting from that any difference in the Canadian import? Yes, I think in this instance there was no Canadian import. There's no distinction, but there would be. Right. What New Farm exported… That's preprocessing. Right, the chemicals. What New Farm exported was herbicides. If this were an export tax, it would be a tax upon the herbicides at the herbicide rate. It wasn't a tax upon herbicides. It was a tax on the chemicals entered into the country, and it was deferred until re-exportation. Is the amount of duty calculated at the time when the goods are imported or when they are exported? The amount is… Well, first of all, I think the importer is going to know where it's going. So they can calculate the amount at the time of importation. They know whether it's going to Canada or not. In order to assess duty, you've got to know how much you're assessing. Don't you assess duty and say your duty on this shipment is $1,140? You don't just say, okay, pay the duty on it and leave it. Maybe you do, I don't know. And leave it to the importer to say, okay, this is right. It's so much a pound. We have so many pounds and the duty is so much a pound. Yeah, but they don't know which pounds are going to Canada and which are going to Thailand, right? And that's probably true. But they know the rate at which these are going to be assessed. And they rate applicable to the chemicals. Once it's processed and they know what's going to Thailand and Canada, they know where it is. That's correct, Your Honor. So, again, that does, I think, distinctly come down to whether this tax was imposed upon a time in the export process or an import process. Can you repeat this one thing for me? I mean, your point that you made before about how you can construe it in a certain way. So you gave us a hypothetical, which is not what's happening here. No, it's not, Your Honor. It's not what's happening here. What about in the HMT case? I mean, can't you come up with this? If you were re-arguing the HMT case again, couldn't you come up with a hypothetical? For example, everybody in the U.S. is assessed $10 a year. But that assessment is waived, or everybody is levied for whatever it was. But that is waived for everyone other than people that use the harbor. Hence, it's an import tax and not an export. I'm concerned about your hypothetical because we can come up with the opposite hypothetical. And you're saying if we can both come up with hypotheticals, you should win because we're trying to uphold the constitutionality. And I just don't know why you couldn't always come up with a hypothetical if you want to twist what's going on here. And you couldn't have done it in the HMT case, which clearly, we know, we could have safely assumed it when we went to the Supreme Court and brought that up. Well, of course, I think anybody can come up with an argument. And the court has to determine whether it's a reasonable construction and not an unreasonable one. But I certainly don't think that the fact that the way the customs enters its temporary duty deferral program, just by the way it operates, violates the export clause. And it clearly could have the very same program, although with a lot more administrative burdens and a requirement to pay up front. So, I mean, the canon of construction that you should construe it as constitutionally is an accurate canon of construction. And I think that for all the reasons in our briefing given here today, particularly, again, to emphasize the fact that this duty is laid upon the condition of the goods that's imported, not the conditions of the goods that's exported, makes it an import duty. I'm seeing I'm about out of time. Just one more quick question. Does customs have the authority to invalidate this regulation and still be consistent with NAFTA? I mean, what happens if this regulation is invalidated with respect to the United States obligations under NAFTA 303? Well, customs would have to, if they invalidated this regulation, they would have to implement another regulation to validate it. Right. Yeah, I think that was right. At importation. I think that's right, Your Honor. Yes. In order to avoid this aversion of import duties and to create and impose and assess an importation to be more accurate, right? Right. And the mere fact of that timing can't render this into a refund system for the stuff that goes to Thailand, right? Right. And perhaps a partial refund for things that go to NAFTA countries depending upon the goods. Just briefly on jurisdiction, clearly if the court rules in our favor that this is constitutional, the court needn't reach the question of A versus I. But even if it does, because New Farm's challenge, particularly as phrased below and as phrased to customs, was a challenge to the regulation. Under normal principles of administrative exhaustion and particularly the favored method in the customs law, they should have been required to exhaust like they did. And the remuneration they got here is certainly not manifestly inadequate. Thompson and the line of harbor maintenance tax cases are kind of sui generis. Thank you, Mr. Hughes. Mr. Junker. Thank you, Your Honor. If I may touch on some of the points just made by Ken. This is a constitution. If there's any way we can see it the way Mr. Hughes suggests to us, why don't you? This is, as the Supreme Court has noted, a straightforward and unique constitutional provision. This is not like the Takings Clause. This is not like the Commerce Clause. This is a unique provision. And so I encourage the Court to look at the IBM case, where in the majority opinion they spell out the precise analysis that needs to be done and the precise limitations and the precise scope for the Export Clause. With respect to Mr. Hughes' comment about liability, I would point out that wherever he thinks liability was assessed, New Farm's obligation to write a check to the U.S. government came at the time of exportation. It did not have to write a check for import duties. It did not have to write it. It wouldn't have had to write a check for export duties if it had gone to another country. It's obligation, the time, the manner, and the payment. But you don't just agree with this hypothetical, which is that if everybody had to write the check on importation... I wouldn't go so far as to say that would completely avoid concerns of the Export Clause, but that would certainly be an improvement on the current regime, Your Honor. Did New Farm know before it actually exported the goods how much duty it would have to pay on them? Your Honor, to the extent it was going to be exporting to Canada and... Before they actually exported the goods to Canada or sold them to people in Canada, did they know how much they would have to pay in duty? The duty rate was known on the goods at time of importation. It's condition at time of importation. And did they know what value of the goods when they were... Yes, Your Honor. But I would point out that for other duty deferral programs... We're just talking about the one duty deferral program that New Farm used. For other duty deferral programs affected and controlled by the regulation, the assessment or calculation of duty is determined by the condition of goods at their time of exportation. Not the one industry here. That's correct. Well, I mean, now that's a little... Well, we're concerned about the punitive class here, Your Honor, as well. And it just goes to show, and it does regardless of whether it applies to New Farm, it does go to show that the duties were not imposed, as they say, at time of importation, based on the language that... on the condition of importation. That's an assessment fact condition that's established. It doesn't relate to when the duties were imposed. It determines on what factual basis will be used to calculate the duties. I would point out another thing, and the Court almost reached this point in the questions. If this is an import duty, and a liability arose at time of importation, why can it and why was it reducible by the amount of duties into Canada and Mexico? There is no other import duty that's subject to that reduction, and I submit to you that that is an indication that... That's an attack on NAFTA, right? Pardon me? That's an attack on NAFTA. I'm simply pointing out that that is an indication that it's a duty on the exports because the logic of the reduction is that they want to do a double duty on exports. We're going to have to stop to keep things even. You've been very kind, Your Honor. Very kind, Your Honor. Thank you for your attention.